1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                         FOR THE DISTRICT OF ARIZONA
8
9   Duane Martin Shepherd,              )    No. CV-09-8137-PCT-SRB (LOA)
                                        )
10              Petitioner,             )    **REPORT AND RECOMMENDATION**
                                        )
11  vs.                                 )
                                        )
12  Charles L. Ryan, et al.,            )
                                        )
13              Respondents.            )
                                        )

14

15          This matter arises on Petitioner's Petition for Writ of Habeas Corpus by Person

16  in State Custody Pursuant to 28 U.S.C. §2254.  (Doc.1)  Respondents filed an Answer to the

17  Petition, doc. 14, to which Petitioner has replied, doc.18.  Accordingly, this matter is ripe

18  for review.  Although Petitioner requests an evidentiary hearing, the matter is suitable for

19  resolution upon the record before the Court and Petitioner has not established that he is

20  entitled to an evidentiary hearing.  *See* 28 U.S.C. § 2254(e), Rule 8 of the Rules Governing

21  § 2254 Cases.  For the reasons set forth below, the Petition should be denied.

22  **I. Factual and Procedural Background**

23          **A. Charges, Guilty Plea and Sentence**

24          On September 16, 2004, Petitioner was staying at Lucia Cardella's house

25  when an altercation broke out between them in the early evening.  (Doc.14, Exh. C at 10)

26  Cardella indicated that she wanted Petitioner to leave. (*Id.* at 11*)* After Petitioner refused

27  to leave, Cardella's neighbors got involved and the Sheriff's Department was called. (*Id.*)

28  Petitioner eventually left Cardella's residence. (*Id.*)   The Sheriff's Department responded

to the call and made a report regarding the incident. (*Id.*)  The Sheriff's Office contacted Petitioner by phone to discuss the incident, but he declined to meet with Sheriff's deputies. (Doc.14, Exh. C at 10)

Later that night, Petitioner returned to Cardella's residence. (*Id.*)  Cardella's doors were locked. (*Id.*)  Petitioner knocked on the door and yelled at Cardella to gain admittance. (*Id.*)  Cardella refused to let Petitioner into her house. (*Id.*)  Eventually, Petitioner kicked in the door and entered Cardella's house with a rifle. (*Id.*)  Petitioner fired a shot that broke a mirror. (*Id.* at 12) Cardella fled the house and ran towards her neighbor's house.  Petitioner also left the house. (*Id.*)  While Cardella was *en route* to her neighbor's, Petitioner yelled threats at her and fired shots into the air. (*Id.*)   Eventually, the Sheriff's Department responded.  When Sheriff's Deputies arrived, Officers Wible and Bracco[1] saw Petitioner with a gun and told him to drop it. (*Id.* at 13)  Petitioner allegedly turned the gun on them. During the Change of Plea Hearing, Petitioner denied having pointed a gun at officers. (*Id.*)  Petitioner was apprehended after barricading himself inside Cardella's residence. (*Id.*)

On September 23, 2004, Petitioner was indicted in the Arizona Superior Court, Coconino County for the following crimes:

Count I. Attempted First Degree Murder

Count II. Discharging a Firearm at Residence

Count III. Aggravated Assault–Minor

Count IV. Aggravated Assault–Officer

Count V. Aggravated Assault–Officer

Count VI. Aggravated Assault–Officer

Count VII. Aggravated Assault–Officer

---

[1]  Although the change of plea transcript refers to Sheriff's Deputy "Rokko," the record reflects that "Bracco" is meant.  (Doc. 14, Exhs. C, G, J)

Count VIII. First Degree Burglary–Residence

Count IX. Misconduct Involving Weapons–Prohibited Possessor

Count X.  Criminal Damage to Property

(Doc.14, Exh. B)

On July 20, 2006, Petitioner filed a motion to continue the trial for 30 days, citing a conflict with another division and the need to interview Deputy Bracco.  (Doc. 1 at 19)   During a July 28, 2006 pre-trial conference, the court denied the motion to continue and affirmed the August 8, 2006 trial date.  (*Id.*; Doc. 14, Exh. D at 4-7)

On August 1, 2006, Petitioner entered into a Plea Agreement with the State, pursuant to which he agreed to plead guilty to Count I, as amended, Aggravated Assault with a Deadly Weapon or Dangerous Instrument, and to Count VIII, First Degree Burglary of a Residence. (Doc. 14, Exh. E)  The victim in Counts I and VIII was Lucia Cardella.  (Doc. 14, Exh. C at 12) The counts in the indictment involving the Sheriff's Deputies were dismissed.  (Doc. 14, Exh. C at 12; Exh. E ¶ 6)  The Plea Agreement stipulated that Petitioner would serve 12 years in the Arizona Department of Corrections for each Count I and Count VIII and that the sentences would run concurrently. (*Id.*)  The plea agreement further provided that the 12-year sentence would run consecutively to a seven-year sentence the court had imposed for a separate offense in CR-2005-0941. (*Id.*) The Plea Agreement was signed by Petitioner, defense counsel, and the prosecutor on August 1, 2006.

On August 1, 2006, Superior Court Judge Danna Hendrix accepted the Plea Agreement at the Change of Plea Hearing. (Doc. 14, Exh. C) The court advised Petitioner of the nature of the charges and the possible sentences on each Count I and VIII. (*Id.* at 4-7) The court then assessed whether Petitioner entered the plea knowingly, intelligently, and voluntarily.  (*Id.* at 4-9)   Petitioner advised the court that he had read the plea agreement, discussed it with counsel, and understood the terms.  (Doc. 14, Exh. C at 4-5) He stated that the plea agreement contained everything to which he had agreed and that

he had not been promised "anything that [was] not in the agreement." (Doc. 14, Exh. C at 5)  Petitioner further stated that he had not been threatened or forced to enter the plea agreement, and that he entered his plea "voluntarily and of [his] own free will." (*Id*. at 5) The court found the plea knowingly and voluntarily, and accepted Petitioner's guilty plea after a factual basis was provided. (Doc. 14, Exh. C)

The sentencing hearing was scheduled for August 25, 2006. (Doc.14, Exh. G at 1)  Before the sentencing hearing, Petitioner filed a Motion to Withdraw Guilty Plea pursuant to Ariz.R.Crim.P. 17.5  (Doc. 14, Exh. F) At the commencement of the sentencing hearing, the court addressed the Motion to Withdraw. (Doc. 14, Exh. G)  In support of his motion to withdraw, Petitioner argued that counsel was ineffective because he put Petitioner in the position of having to decide whether to proceed to trial without first having the opportunity to assess the strength of the State's case or evaluate the relative merits of the State's plea offer compared to his chances at trial, and as a result, his plea was not voluntarily, knowingly, or intelligently made. (Doc.14, Exh. F at 2) Petitioner's claim was based on his having allegedly been "denied of an opportunity to conduct critical pretrial investigation [interviewing Deputy Bracco] before entering the plea agreement. (*Id.*) Petitioner explained that former Sheriff's Deputy Bracco had refused to be interviewed on the ground that he was a victim and did not have to agree to an interview.  The defense was notified on or about July 19, 2006, that Deputy Bracco was no longer with the Sheriff's office and was working in the Washington D.C. area. Around that same time, the Coconino Counnty Attorney's Office changed its position regarding Bracco's victim status and agreed that he could be interviewed. (*Id*. at 3) Petitioner argues that "discovering the nature and extent of Bracco's testimony at trial would have been critical to [Petitioner] as he contradicts other Sheriff's deputies who stated that [Petitioner] pointed a weapon at them." (Doc. 14, Exh. F at 3)  Further,

- 4 -

Petitioner argued he was "put in the position" of having to decide whether to enter the plea without the benefit of complete discovery. (*Id.*)

In opposition, the State argued that Petitioner had been aware of Bracco since 2004, "and in 2004 when [the] case first came to light, [Bracco] didn't believe that he was allowed to assert his victim's rights." (Doc. 14, Exh. G at 8)  Petitioner could have filed a motion to determine the victim status of Bracco, but he failed to do so. (*Id.*)  The State also argued that Petitioner had the opportunity to interview Bracco as evidenced by the fact that the prosecutor and defense counsel had plane tickets to go to Washington D.C. to interview Bracco before Petitioner entered his change of plea.  (*Id.*)  Finally, the State argued that Bracco had written a report regarding the incident that had been,"disclosed for many, many months, if not years."  (*Id.*)  Petitioner responded that the report was not equivalent to an interview with Bracco himself because the report was prepared by Detective Bruce Cornish and merely summarized his interview with Bracco regarding the incident (Doc. 14, Exh. G at 9-10)

Although Petitioner admitted that he knew an interview with Bracco had been scheduled for on or about August 2, 2006 when he entered his plea on August 1, 2006, he contended that the trial court had indicated that it "if there wasn't a plea entered on [August] 1st, that the case was proceeding to trial."  (Doc. 14, Exh. G at 10-11)  Thus, Petitioner felt he could not wait to make a decision about the plea until after he interviewed Bracco.  The sentencing court did not recall making such a statement and took a recess to review the transcript of the June 28, 2006 Final Pretrial Conference during which the statement was allegedly made.  (*Id.* at 12; Doc. 14, Exh. D)  The court noted that, during the June 28, 2006 conference, it had denied a motion to continue the trial which was scheduled for August 8, 2006.  (Doc. 14, Exh. G at 10-11; Exh. D at 7)  The court further noted that the interview with Bracco was "set up," and pending motions were to be argued on August 1, 2006, and that on August 1, 2006, Petitioner indicated

that he had accepted the plea. (*Id.* at 12-13)  The court determined that it had not told Petitioner that if he did not enter a plea on August 1, 2006, the case would proceed to trial. (Doc. 14, Exh. G at 12-13; Exh. D at 8)  After considering arguments of counsel, the court denied the Motion to Withdraw Guilty Plea. (*Id.* at 13)

In accordance with the plea agreement, the court sentenced Petitioner to 12 years imprisonment on each Count I and Count VIII, to run concurrently, with credit for 707 days time served. (*Id.* at 22)  The court further ordered that the 12-year sentence would run consecutively to a seven-year sentence the court had imposed for a separate offense in CR-2005-0941. (*Id.*)  The court found that financial and emotional harm to the victim were aggravating factors and that the absence of prior felonies was a mitigating factor. (*Id.*)  Consistent with the plea agreement, the Court dismissed the remaining counts of the indictment. (Doc. 14, Exh. G at 23)

**B. Post-Conviction Proceeding**

Petitioner waived his right to a direct appeal by pleading guilty. (Doc. 14, Exh. C at 9)  On September 6, 2006, Petitioner, through counsel, filed a timely notice of Post-Conviction Relief. (Doc. 14, Exh. H)  In his Petition, Petitioner raised the following claim: the court erred in denying his motion to withdraw his guilty plea pursuant to Ariz.R.Crim.P. 17.5 because Petitioner was forced to enter the plea agreement before interviewing Deputy Bracco. (Doc. 14, Exh. I)  Petitioner argued that, although the State had not precluded a defense interview of Deputy Bracco, the court did, "or at a minimum, [Petitioner] thought the court [had done] so." (Doc. 14, Exh. I)  Petitioner further argued that his plea was "coerced by the circumstances presented to him by his attorney," and that counsel was ineffective for failing to interview Deputy Bracco at an earlier date. (Doc. 14, Exh. I) Petitioner acknowledged in his petition for post-conviction relief that Deputy Bracco was scheduled to be interviewed before the trial date. (Doc. 14, Exh. I) Petitioner cited only state law cases and state statutes in support of his claims.  After

- 6 -

Petitioner filed the petition, the court permitted counsel to interview Deputy Bracco. (Doc. 1 at

On May 31, 2007, the post-conviction court conducted an evidentiary hearing. (Doc. 14, Exh. J)  During the hearing, Petitioner testified that if he had had Bracco's statement from his interview at the time of entering his plea on August 1, 2006, he would not have pled guilty. (Doc. 14, Exh. J at 8)   He further testified that counsel had informed him that the trial court had indicated that if Petitioner did not take the plea by August 1, 2006, he must proceed to trial. (*Id.* at 10)   At the conclusion of the evidentiary hearing, the post-conviction court took the matter under advisement.  (Doc. 14, Exh. J) On June 15, 2007, the court issued a ruling denying the petition for post-conviction relief. (Doc. 1 at 18)  The court found that it had not precluded Petitioner from interviewing Bracco. (*Id.* at 26)   Rather, the court noted that it had facilitated the scheduling of an interview with Bracco. (*Id.*)

The court also found that Petitioner's "plea was intelligently, voluntarily, and knowingly made, and not the result of coercion."  (Doc. 1 at 26)  The court noted that during the July 28, 2006 hearing, it had indicated that it would like to know whether Petitioner would accept the plea by August 1, 2006.  (Doc. 1 at 26; Doc. 14, Exh. D at 8) The trial court then discussed how the parties could arrange an interview of Deputy Bracco.  (*Id.*; Exh. D at 8-14)  The post-conviction court also noted that, during the June 28, 2006 conference, the trial court had "stated that it could accept the plea the day before the trial [set for August 8, 2006]."  (Doc. 1 at 26; Doc. 14, Exh. D at 8)  The court also noted that, prior to entering his plea, Petitioner had copies of all disclosure and

> was aware that Deputy Bracco's probable testimony contradicted all of the other police officers as to what they saw, because during sentencing and prior to Deputy Bracco's interview, defendant's attorney avowed that Deputy Bracco would have testified that he saw the defendant turn and look, but never raise a gun or point it, and then run up the stairs into the house.

(Doc. 1 at 26-27)  The court concluded that Petitioner "failed to show by a preponderance of the evidence that a manifest injustice would occur unless he [was] permitted to withdraw from his plea, or that his plea was not knowingly, intelligently, or voluntarily made."  (Doc. 1 at 27)

Finally, the post-conviction court found that it could not "find by a preponderance of the evidence that defense counsel was ineffective for failing to interview Deputy Bracco . . . ." (*Id.*)

On June 19, 2007, Petitioner filed a Motion for Rehearing which the court denied on June 27, 2007.  (Doc. 1 at 29)

On August 15, 2007, Petitioner appealed the trial court's denial of his petition for post-conviction relief to the Arizona Court of Appeals, Petitioner presented one issue: "[w]hether the unique facts of the present case dictated that Defendant be allowed to withdraw from his plea agreement."  (Doc.14, Exh. K at 2)  Petitioner argued he should have been permitted to withdraw from the plea pursuant to Arizona Rule of Criminal Procedure 17.5. (*Id.*)  On May 14, 2008, the Arizona Court of Appeals summarily denied review. (Doc. 14, Exh. L)

Petitioner sought review in the Arizona Supreme Court.  Petitioner presented two issues: (1) "[w]hether the unique facts of the present case dictated that Defendant should be allowed to withdraw from his plea agreement?"; and (2) "[w]hether Defendant has been denied his Arizona Constitutional Right to Appeal?" (Doc. 14, Exh. M at 2)  On the first issue, Petitioner presented the same argument that he presented to the Arizona Court of Appeals. (*Id.* at 4-7)  On the second issue, Petitioner argued that his Arizona constitutional right to appeal under Article 2, Section 24 had been violated because there had been no ruling on the merits from an appellate court. (*Id.* at 7)  On October 28, 2008, the Arizona Supreme Court summarily denied reviewd. (Doc.14, Exh. N)

/ / /

/ / /

## C. Federal Petition for Writ of Habeas Corpus

On August 24, 2009, Petitioner timely filed the instant Petition for Writ of Habeas Corpus raising two claims for relief. (Doc.1)  In Ground One, Petitioner contends that the trial court violated Petitioner's Fourteenth Amendment right to due process when it refused to permit Petitioner to withdraw from the plea agreement because the trial court had denied Petitioner an opportunity to interview Deputy Bracco before the change of plea hearing. (Doc. 1)  In Ground Two, Petitioner argues that he was denied a "[m]eaningful right of appellate review in violation of his constitutional guarantees." (Doc. 1 at 7)  In support of this claim, Petitioner asserts that the Arizona Court of Appeals should have reviewed the merits of his petition for review from the denial of his petition for post-conviction relief.

## II. Exhaustion and Procedural Bar

Respondents argue that Petitioner did not properly exhaust his state remedies on either Ground One or Ground Two because he did not fairly present those claims to the Arizona Court of Appeals.  Respondents further argue that those claims are now procedurally defaulted and barred from federal habeas corpus review and should be dismissed.

### A.  Relevant Legal Principles

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted available state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  When seeking habeas corpus review, Petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981).  To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with

the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct review or in a petition for post-conviction relief. *See Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2004); *Crowell v. Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

To result in exhaustion, claims must be fairly presented. That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his federal claim. *Picard v. Conor*, 404 U.S. 270, 276-77 (1971). A claim has been fairly presented if petitioner has described in state court both the operative facts and the federal legal theory upon which he bases his claim in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (stating that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1205 (9th Cir. 2005) (stating that "[t]o exhaust a federal constitutional claim in state court, a petitioner has to have, at least, explicitly alerted the court that she was making a federal constitutional claim."). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish fair presentation of a federal constitutional claim. *Castillo*, 399 F.3d at 1002 (observing that "[e]xhaustion requires more than drive-by citation, detached from any articulation of an underlying federal legal theory."); *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of

the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27. In summary, a "petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum; (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default. First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. *Nunnemaker*, 501 U.S. at 802-05. Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297-99 (1989).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3)

constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); Title 28 U.S.C. § 2254(c)(2)(B).

**B. Application of Law to Petitioner's Claims**

**1. Ground One - Due Process Violation**

In Ground One, Petitioner argues that the trial court violated his Fourteenth Amendment right to due process by denying his request to withdraw from the plea agreement. Petitioner argues that the court should have permitted him to withdraw from the plea agreement because his plea was not based on all of the evidence because the court did not permit Petitioner to interview Deputy Bracco before deciding whether to accept the plea agreement.

Respondents argue that Petitioner's Due Process claim is procedurally defaulted and barred from federal habeas corpus review because Petitioner did not present a federal due process claim to the state courts and he cannot return to state court to present such a claim. (Doc. 14 at 7)

The record reflects that, on post-conviction review, Petitioner challenged the trial court's failure to permit him to withdraw his guilty plea on the basis of state law, Ariz.R.Crim.P. 17.5. (Doc. 14, Exh. I) Likewise, the post-conviction court resolved Petitioner's claim solely on the basis of state law. (Doc. 1 at 18-31) On appellate review of the denial of his petition for post-conviction relief, Petitioner again based his claim

solely on state law, Arizona Rule of Criminal Procedure. 17.5. (Doc. 14, Exh. K)

Finally, in his petition for review to the Arizona Supreme Court, Petitioner again raised only a state law challenge to the trial court's refusal to permit him to withdraw from the plea agreement under Ariz R. Crim. P. 17.5. (Doc. 14, at Exh. M)

Because Petitioner never presented the Fourteenth Amendment Due Process claim asserted in Ground One to the state courts, he did not fairly present that claim. Moreover, any attempt by Petitioner to present his federal Due Process claim to the state courts would be futile. Petitioner is time-barred from raising a Due Process claim in a successive petition for post-conviction relief because the time for filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later.") Likewise, Petitioner is time-barred from seeking appellate review of his Due Process claim because Arizona Rules of Criminal Procedure 32.9(c) and 31.19(a) require petitions for review from the denial of a petition for post-conviction relief, and petitions for review to be filed within 30 days after the final decision of the trial court or the court of appeals. Thus, Petitioner is time-barred from seeking further review in the state court. Additionally, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a defendant is precluded from raising claims that could have been raised on direct appeal or in any previous collateral proceeding. *See State v. Curtis,* 185 Ariz. 112, 113, 912 P.2d 1341, 1342 (Ariz. Ct. App. 1995) ("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State v. Berryman,* 178 Ariz. 617, 624, 875 P.2d 850, 857 (Ariz. Ct. App. 1994) (defendant's claim that his sentence had been improperly enhanced by prior conviction was precluded by defendant's failure to raise issue on appeal).

Because Petitioner has no available state remedies for his Fourteenth Amendment Due Process claim in Ground One, that claim is technically exhausted and procedurally barred from federal habeas corpus review.

### a. Excusing Procedural Bar - Ground One

Because Petitioner's Due Process claim asserted in Ground One is procedurally defaulted, federal habeas corpus review is only available if he can establish cause and prejudice or a fundamental miscarriage of justice.  To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules.  *Murray,* 477 U.S. at 488-492.  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel.  *Id.*  Prejudice is actual harm that results from the constitutional violation or error.  *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations.  *Smith v. Murray,* 477 U.S. 527, 533 (1986).  Petitioner offers no argument sufficient to overcome the procedural bar.  Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his failure to present his claims to the Arizona  courts. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding that an illiterate *pro se* petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (finding that petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.)  Petitioner has not shown cause or prejudice to excuse the procedural default.

Petitioner has also failed to show that failure to consider his defaulted claim will result in a fundamental miscarriage of justice.  A federal court will only review a procedurally defaulted habeas claim on the merits if petitioner demonstrates that failure to

consider the merits of the claim will result in a "fundamental miscarriage of justice." A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298 (1995). The fundamental miscarriage of justice exception applies to a "narrow class of cases" in which a petitioner makes an extraordinary showing that an innocent person was probably convicted because of a constitutional violation. *Schlup v. Delo,* 513 U.S. 298, 231 (1995). Petitioner has the burden of demonstrating that a "constitutional violation has resulted in the conviction of one who is actually innocent." *Id.* at 327. To establish the requisite probability, Petitioner must prove with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 324, 327. New evidence presented in support of a fundamental miscarriage of justice claim may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 324, *see also, House v. Bell,* 547 U.S. 518 (2006) (stating that a fundamental miscarriage of justice contention must involve evidence that the trial jury did not have before it).

Petitioner has not offered any new evidence, or asserted that, in light of any newly discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

Because Petitioner has not established any basis to excuse his procedural default, Petitioner's Due Process claim asserted in Ground One is barred from federal habeas corpus review.

### b. Merits of Ground One

Moreover, even if Petitioner's Due Process claim asserted in Ground One were properly before the Court, it lacks merit. Petitioner asserts that he was denied his Fourteenth Amendment right to due process because he was forced him to entered the plea agreement and plead guilty before being permitted to interview Deputy Bracco. Petitioner's claim assumes that defendants are entitled to all potentially exculpatory

evidence before entering a plea agreement or pleading guilty.  Criminal defendants, however, have no constitutional right to access all exculpatory evidence before entering a guilty plea.  In *Everett v. McNeil*, 2009 WL 3010212, * 15 (S.D.Fla. 2009), the district court rejected petitioners "argument that his guilty plea was not knowing and voluntary because of the state's alleged *Brady*[2] violation which occurred before his guilty plea was entered. . . ."  The court explained that the Supreme Court has not extended *Brady* to proceedings in which the defendant enters a guilty plea.  *Id*. at * 15. *See also United States v. Ruiz*, 536 U.S. 622, 634 (2000), (Thomas J., concurring) (stating that "[t]he principle supporting *Brady* was avoidance of an unfair trial to the accused.  That concern is not implicated at the plea stage) (internal citations omitted); *Orman v Cain*, 228 F.3d 616, 617, 621(5th Cir. 2000) (holding that it is reasonable for courts to decline to extend *Brady* to guilty pleas because *Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant pleads guilty.).

Moreover, the record reflects that the trial court did not deny Petitioner the opportunity to interview Deputy Bracco before he entered into the plea agreement.  The court simply set the matter for a final pre-trial hearing on August 1, 2006 and indicated that Petitioner should advise the court at that time whether he accepted the plea offer.  (Doc. 14, Exh. D)  The trial was not scheduled until August 8, 2006.  Petitioner was aware that an interview with Deputy Bracco was scheduled for on or about August 2, 2006, before the trial date.  (Doc. 14, Exh. G at 10)  However, during the August 1, 2006 hearing, Petitioner never indicated that he wished to wait to enter his plea until after counsel interviewed Deputy Bracco.  Additionally, although counsel had not interviewed Deputy Bracco, a report summarizing Deputy Bracco's statement regarding the incident had been disclosed and Petitioner was aware of Deputy's probable testimony.  (Doc. 14,

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

Exh. G at 9)  Specifically, Petitioner was aware of Deputy Bracco's probable testimony, which contradicted that of the other officers at the scene, that he did not see Petitioner point a gun at the officers.  (Doc. 14, Exh. G at 15-16)  Petitioner's understanding of Bracco's probable testimony before he entered his guilty plea is consistent with the statements Bracco made during his interview conducted on May 21, 2007 for the post-conviction proceedings.  (Doc. 18, Exh. A)  Consistent with how Petitioner had thought Bracco would recount the events, Bracco stated that he saw Petitioner turn in the direction of the officers "and then he ran into the house."  (Doc. 18, Exh. A at 5)   Bracco stated that, when Petitioner turned in the officers direction, "the rifle didn't come in [the officers'] direction" and that the muzzle was "[b]asically [he] guess[ed pointed] in [the] direction of the house."  (Doc. 18, Exh. A at 7)  During his interview, Deputy Bracco further stated that the he did not see the muzzle of the rifle pointing "[d]irectly at [him]" but "it came in [the officers'] direction."  (Doc. 18, Exh. A at 8-9)

Moreover, the two charges to which Petitioner pled guilty did not involve his conduct related to the officers.  (Doc. 14, Exhs. C at 10-12, 15; G at 14-16)   Rather, he only pled guilty to charges based on activity that involved Cardella that occurred before the officers arrived.  (Doc. 14, Exh. C at ; Exh. G at 14-15)  The charges involving the Sheriff's officers were dismissed.  (Doc. 14, Exh. C at 12; Exh. G at 23)

### 2 . Ground Two

In Ground Two, Petitioner argues that he was denied an opportunity for meaningful appellate review because the Arizona Court of Appeals did not review the merits of the trial court's denial of his petition for post-conviction relief.  (Doc. 1 at 7)  Respondents mischaracterize Petitioner's claims as challenging the denial of direct review to pleading defendants in Arizona.  (Doc. 14 at 8)

When correctly construed, it is apparent that Petitioner could not have challenged the Arizona Court of Appeals' alleged failure to consider the merits of his petition for review until he did so in his petition for review to the Arizona Supreme Court.

(Doc. 14, Exh. M at 7)  The Arizona Supreme Court summarily denied review.  (Doc. 14, Exh. N)  Petitioner, however, based his claim on Arizona law, and did not present a federal claim based on the alleged lack of appellate review.  (Doc. 14, Exh. M at 7)  Because Petitioner did not present a federal challenge to the state courts, a federal challenge to the denial of appellate review is technically exhausted and procedurally barred.

Moreover, even assuming that Petitioner's claim raised in Ground Two is properly before this Court, it lacks merit.  First, although the Arizona Court of Appeals summarily denied review, there is no evidence that it did not consider the merits of Petitioner's claims.  Rather, the appellate court's ruling states that the appellate court "considered this petition for review from the trial court's denial of post-conviction relief.  IT IS ORDERED denying review."  (Doc. 14, Exh. L)   Although the appellate court's decision lacks a detailed explanation, the opinion indicates that the petition for review was "considered."  (*Id*.)

Additionally, criminal defendants have no federal constitutional right to a direct appeal or to collateral review of their convictions and sentences.  *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402 (2001) (stating that each state has created mechanisms for both direct appeal and state post-conviction review, even though there is no constitutional mandate that they do so.) (internal citations omitted).

In view of the foregoing, Petitioner did not suffer any violation of his federal or constitutional rights by the appellate court's summary denial of his petition for review of the trial court's denial of his petition for post-conviction relief.

**III. Conclusion**

In accordance with the foregoing, the undersigned recommends that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 5th day of August, 2010.

_____
Lawrence O. Anderson
United States Magistrate Judge

- 19 -